UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MINNESOTA LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CLORINDA D'AGNOLO, LINDA SULLIVAN as the trustee of the DAVID M. LIPARI TRUST, MARY A. LIPARI, CAROL A. LIPARI, and P.J.L. (a minor),<br><br>Defendants. | No. 15 CV 11643<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

After David Lipari passed away, a dispute arose over the beneficiary of his life insurance policy. The insurer, Minnesota Life Insurance Company filed a complaint for interpleader and a motion to deposit funds in this action. Defendants Susan, John, Carol, Mary and Paul Lipari, David's ex-wife and children, respectively, filed cross-claims against their co-defendants, Linda Sullivan, David's sister, and Clorinda D'Agnolo, David's significant other. The Liparis move for partial summary judgment regarding the distribution of the Minnesota Life Insurance policy proceeds. The parties have asked the court to resolve: (1) who is the beneficiary of the life insurance policy; (2) which is the controlling document of the trust; and (3) who is the trustee. For the following reasons, the Liparis' motion for partial summary judgment is granted in part and denied in part.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Justifiable inferences are drawn in the nonmoving party's favor. *Id*. at 255. The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

II. **Background**

On October 23, 2001, David Lipari executed the "David M. Lipari Trust Agreement." [57-12] at 1–5.[1] The subsection "Trustee and Powers" provides, in relevant part:

> I shall act as Trustee under this instrument. Upon my death, or if I resign or become incapacitated, my spouse, SUSAN M. LIPARI, shall act as successor Trustee. If SUSAN M. LIPARI is unable or unwilling to act, then CAROL MORIARTY shall act as successor Trustee. If CAROL MORIARTY is unable or unwilling to act, then CAROLYN LINDGREN shall act as Trustee. If CAROLYN LINDGREN is unable or unwilling to act, then LORAINE DILETTI and DENISE SULLIVAN shall act as Co-Trustees. If only one of the aforementioned individuals is able and willing to act, then TERRY SULLIVAN shall act as Co-Trustee with the remaining Co-Trustee. If only one of the aforementioned individuals is able and willing to act, then that individual shall act alone as sole Trustee. If none of the aforementioned individuals are able and willing to act, then NEW YORK LIFE TRUST COMPANY, F.S.B., (or any successor to its trust business) shall act as final Trustee hereunder; provided, however, that the Corporate Trustee shall have no duties under this instrument until

---

[1] Bracketed numbers refer to entries on the district court docket.

it has actual knowledge or has received notice in writing of the death, resignation or incapacity of all of the above named individual Trustees.

[57-12] at 3. Over six years later, David and Susan ended their marriage. [12] ¶ 45. The marriage dissolution order required David to name his four children as sole and exclusive beneficiaries under his wills and trusts. [12] ¶¶ 50–51; [21-3] at 11.

A document dated February 19, 2011, and titled "First Amendment to the David M. Lipari Trust Agreement Dated October 23, 2001," bears David's signature and a notary's signature. [97-2] at 1–2. It purports to delete the original trust's list of successor trustees and replace the relevant language with the following:

> I shall act as Trustee under this instrument. Upon my death, or if I resign or become incapacitated, the following named individuals, in the following order, shall serve as successor Trustee: 1. My sister, LINDA SULLIVAN; 2. My sister, DENISE SULLIVAN; 3. My sister, LORI DILETTI; 4. My brother, JOE LIPARI; and 5. My significant other, CLORINDA D'AGNOLO. In the event that CLORINDA D'AGNOLO and I are married at the time of my death, resignation or incapacity, CLORINDA D'AGNOLO's nomination and appointment as successor Trustee shall take priority over any other named individual herein. In the event that my spouse, CLORINDA D'AGNOLO, is unable or unwilling for any reason to so act, the remaining named individuals shall then be nominated, in the same order following her appointment thereof.

[97-2] at 1–2. The Liparis challenge the authenticity of this document. [99] at 8–9. During a deposition in David and Susan's divorce case, David was shown a document titled "First Amendment to the David M. Lipari Trust Agreement Dated October 23, 2001," which included the language quoted above and which was identical to the first page of the First Amendment filed as an exhibit in this case. [99] at 8. David testified that he never executed the document.

David named the David M. Lipari Trust as the sole beneficiary to the proceeds of his Minnesota Life Insurance policy. [57-2] at 3–4. A few weeks after David passed away, the Lipari children claim to have entered into a "Non-Judicial Settlement Agreement Pursuant to 760 ILCS 5/16.1(d)" with their aunt, Carolyn Lindgren, who they say was then the trustee. [107] at 18; [107-1] at 1. It states that the parties to the agreement wish to amend the terms of the administration of the trust, as is permitted under 760 ILCS 16.1(d)(4)(k) & (f) and §§ 11.01, 11.02, 11.08 of the Trust. [107-1] at 1. It then provides that "effective this date, and until such time as she resigns, becomes incapacitated or dies, Susan Lipari shall be delegated all the powers of the position of Trustee." Thereafter the powers and duties of the Trustee shall revert to Carolyn Lindgren. *Id.* Sullivan and D'Agnolo challenge the authenticity of the Non-Judicial Settlement Agreement because the Liparis neglected to mention the document in earlier pleadings, including in the Liparis' declaratory judgment claim that Susan is trustee. [111] at 7.

Several months after David's death and after this litigation had commenced, Sullivan signed a "Trustee Resignation Under the David M. Lipari Trust Agreement," which stated that she had not acted as trustee thus far, nor did she intend to act as trustee in the future, and she confirmed that she "do[es] not accept the appointment as trustee under the trust and, if [she is] deemed to be trustee under the trust, [she] hereby resign[s] as trustee effective immediately." [107-2] at 2. Sullivan's attorney wrote the Liparis a letter, enclosing Sullivan's resignation, and explaining that "[f]or various reasons not related to your aunt's relationship

with you she does not believe that it is in your best interests for her to be the successor trustee of your father's trust." [107-2] at 1. Thereafter, Sullivan claims, the Liparis' attorney solicited similar resignations from the other named trustees in the First Amendment. [97] ¶¶ 9, 11. Denise Sullivan and Loraine/Lori Diletti agreed to not act as successor trustee, but Joe Lipari and Clorinda D'Agnolo have neither agreed nor declined to do so. *Id.* Believing that no one had been properly installed as trustee, [97] ¶ 10, and due to a change of circumstances and perspective, Linda Sullivan decided she wanted to be the trustee. [97] ¶ 15. On November 4, 2016, Sulllivan's lawyer emailed the Liparis' attorney to inform them that "Linda Sullivan hereby revokes the Trustee Resignation and accepts appointment as successor trustee." [97-4] at 1. The Liparis believe this revocation is ineffective. [99] at 6.

### III. Analysis

The parties are now in agreement that the David M. Lipari Trust is the sole beneficiary of the Minnesota Life Insurance policy proceeds. [111] at 1. Accordingly, the Liparis are entitled to summary judgment as to this issue. There is a dispute over who the trustee of the David M. Lipari Trust is, however. The Liparis say that neither Sullivan nor D'Agnolo have standing to litigate the question. I disagree. Sullivan's claim that she is the trustee and D'Agnolo's statement that she would be willing to serve as trustee because "[t]hat is what David wanted and I would fulfill his wishes," [111-3] ¶¶ 11–12, present an interest in the identity of the trustee and adequate stakes in the outcome such that they may contest the Liparis' motion.

According to the Liparis, Susan Lipari should be the trustee because she is the only person who has accepted the responsibilities of being trustee, and the Non-

5

Judicial Settlement Agreement gave Lipari that role. According to Sullivan and D'Agnolo, the First Amendment is operative and thereby put Sullivan in the line of trustees; her decision to revoke her resignation makes her the trustee now.

Under Illinois law, the trustee and all beneficiaries may enter into a binding non-judicial settlement agreement as to various matters involving a trust. 760 ILCS 5/16.1(d). So long as the terms of the agreement do not conflict with the material purpose of the trust, the authority of the trustee and beneficiary to reach such agreements is broad. 760 ILCS 5/16.1(d)(4). Agreements may cover interpretation of the terms of a trust, exercise of a trustee's power, resolution of bona fide disputes relating to administration, and "[a]ny other matter involving a trust to the extent the terms and conditions of the nonjudicial settlement agreement could be properly approved under applicable law by a court of competent jurisdiction." 760 ILCS 5/16.1(d)(4)(A), (C), (J), and (M).

The Liparis rely on a subsection that allows "[r]emoval, appointment, or removal and appointment of a trustee, […] including without limitation designation of a plan of succession or procedure to determine successors to any such office." 760 ILCS 5/16.1(d)(4)(F). The Non-Judicial Settlement Agreement did not provide for the removal of Lindgren as trustee and the appointment of Susan as trustee. Instead, Lindgren agreed to *delegate* all the trustee powers to Susan, which is prohibited under Illinois law. 760 ILCS 5/5.1; *In re Hartzell's Will*, 43 Ill.App.2d 118, 134 (Ill. App. Ct. 1963). This agreement, even if authentic, does not properly install Susan as the trustee.

As for the First Amendment, the Liparis insist it cannot control because David testified under oath in a deposition that he did not execute the document. Sullivan and D'Agnolo correctly note that David's deposition testimony was from a different action and therefore it cannot operate as a judicial admission in this case. *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000). Since David's testimony merely serves as an evidentiary admission, Sullivan and D'Agnolo may controvert it. *Id.* at 954–55. They do so by pointing to David's signature at the end of the First Amendment and the fact that the document was notarized, which means it is self-authenticating. Fed. R. Evid. 902(8). As a result, there is a dispute over whether the First Amendment is enforceable.

If the First Amendment was not effective, then Sullivan was never in the line of succession for trusteeship. If she had no office to resign, the question of whether Sullivan could revoke her resignation may not need answering. Nevertheless, a few points on this topic are worth noting. The Restatement of Trusts says courts may allow trustees to revoke a renunciation if it was made while the probate estate is still in administration and so long as the revocation would not prejudice the interests of the beneficiaries. Restatement (Third) of Trusts § 35 (2003). Another treatise echoes the fact-specific nature of this inquiry: "the question as to whether a renunciation […] may be withdrawn is generally dependent, at least in large part, upon the circumstances under which the retraction of the renunciation is sought." 153 A.L.R. 220 (1944). Sullivan identifies two motivating reasons for her resignation: fear that litigation would impact her own pecuniary interests and a

belief that a conflict of interest prevented her from serving as trustee. [111-2] ¶¶ 16–17. A trustee with these concerns should resign, as she "bears an unwavering duty of complete loyalty to the beneficiary of the trust." *N.L.R.B. v. Amax Coal Co., a Div. of Amax*, 453 U.S. 322, 329 (1981). Sullivan's reasons for resigning and then revoking that resignation suggest that she would not be an appropriate trustee, because Sullivan has already allowed her self-interest to outweigh the needs of the beneficiaries. "[T]he rule against a trustee dividing his loyalties must be enforced with uncompromising rigidity." *Id.* at 329–30 (quotation omitted). On the current record, it is not likely that a court would recognize Sullivan's revocation and install her as trustee.

If the Original Trust controls, then Carolyn Lindgren was in the line of trustees and, assuming she accepted the role, she was the trustee. But she could not delegate her powers to another, so the Non-Judicial Settlement Agreement was not effective. Lindgren may still be the trustee. On the other hand, if the First Amendment controls, then Lindgren was not the trustee and she could not enter into any Non-Judicial Settlement Agreement; Sullivan was not the trustee due to her resignation; thus, it would appear that Joe Lipari is the automatic successor trustee. D'Agnolo has already indicated that she would accept the role if given the chance. Suffice it to say that disputes over material facts remain, and the Liparis have not proven as a matter of law that Susan is the trustee. Their motion for partial summary judgment on this issue is denied.

## IV. Conclusion

The Lipari's partial motion for summary judgment, [57], is granted in part and denied in part. The David M. Lipari Trust is the sole beneficiary of the Minnesota Life Insurance policy. There are remaining disputes of material fact as to which is the controlling trust document and as to who is the trustee.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: 1/18/2017